**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____
                                   )
RICHARD W. BURKES,                 )
                                   )
            Plaintiff,             )
                                   )
v.                                 ) Civil No. 12-321 (EGS)
                                   )
ERIC HOLDER JR., Attorney General  )
Of the United States,[1]           )
                                   )
            Defendant.             )
_____)


<u>**MEMORANDUM OPINION**</u>

Plaintiff Richard Burkes brings this action seeking damages

for alleged violations of Title VII of the Civil Rights Act of

1964, 42 U.S.C. § 2000e et seq. ("Title VII") based on

plaintiff's race, hostile work environment and retaliation for

protected activity.  Defendant filed a motion to dismiss

pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing

plaintiff failed to exhaust his administrative remedies and

failed to state a claim on which relief can be granted.  Upon

consideration of the motion, the entire record herein, and for

_____

[1] Plaintiff originally named Robert S. Mueller III, Director of
the Federal Bureau of Investigation, as a defendant in this
matter, but has since agreed to dismiss him from the case.
Pl.'s Opp'n to Def.'s Mot. to Dismiss ("Pl.'s Opp'n") at 11-12.
Plaintiff has also voluntarily agreed to dismiss Count IV of his
complaint, which alleges a violation of 42 U.S.C. § 1983. *Id.*
Accordingly, defendant Mueller and plaintiff's Section 1983
claims are **DISMISSED.**

the reasons stated below, the motion to dismiss will be **GRANTED
IN PART AND DENIED IN PART**.

### I. BACKGROUND

#### A. Plaintiff's Complaints to Management in Late 2009 and Early 2010; Plaintiff Observes Stuffed Monkey Hanging from Eraser Board in February 2010.

Plaintiff has been employed by the FBI since March 1988,
and has served as a Lead Program Analyst within the Records
Management Division since June 2008. Compl. ¶ 13. In late 2009
and again in early 2010, Mr. Burkes made complaints to the
Department of Justice Office of Inspector General and Bradley
Creamer, his Shift Supervisor, of differential treatment of
White employees and African American employees. *Id.* ¶ 14. He
also reported security violations involving contractors,
specifically, that Contract Manager Jackie Cox was involved in
security violations. *Id.* ¶ 15. Ms. Cox is a friend of Mr.
Creamer's, and plaintiff alleges that Creamer told Cox that the
plaintiff had complained about her activity, and that she should
"try to get something" on the plaintiff. *Id.* Ms. Cox was
eventually terminated as a result of plaintiff's complaint. *Id.*
¶ 17.

On February 17, 2010, the plaintiff witnessed a stuffed
monkey hanging by its neck on an eraser board in a public work
area within the office, which was allegedly hung by Mr. Creamer.
*Id.* ¶ 18. Mr. Burkes immediately complained to a supervisor and

the Department of Justice's Office of Inspector General, and
informed them both that he believed the display was
discriminatory. *Id.* ¶ 19. Plaintiff alleged Mr. Creamer took
the toy monkey down, but then placed the monkey in an overhead
bin in his cubicle, where employees could still see it, for
eight additional days. Compl. ¶ 26; Def.'s Mot. to Dismiss at
Ex. A-8 (EEOC Report of Counseling by R. Burkes).

**B. EEOC Complaint Process**

Plaintiff made initial contact with the agency's Equal
Employment Opportunity office ("EEOC") on April 6, 2010. Compl.
¶ 27, Def.'s Mot. to Dismiss at Ex. A-8. He alleged that "on
2/17/10, [he] believed he was discriminated against based on his
race (Black) and age (40) when he saw a toy monkey hanging by a
noose on a bulletin board located in the management seating area
of the Document Conversion Laboratory." *Id.* Plaintiff
submitted an official Complaint to the EEOC on April 21, 2010,
alleging race discrimination and age discrimination.[2] Compl. ¶
28, Def.'s Mot. to Dismiss Ex. A-2.

On May 21, 2010, plaintiff requested that his EEO Complaint
be amended to include reprisal. Compl. ¶ 28. Plaintiff
asserted that in late 2009 and early 2010, he complained to his
supervisors and to the Office of Inspector General about the

---

[2] Plaintiff's EEO Complaint also included a charge of age
discrimination. However, he abandoned that claim at the
administrative level and does not raise it in this case.

"discriminatory and retaliatory treatment and hostile work environment he was experiencing." *Id.* ¶¶ 60, 62.  Specifically, plaintiff alleged that "[o]n September 7, 2009, [he] complained about race discrimination in the workplace and other wrongs witnessed," and on February 3, 2010, he notified managers that "contractors may be working with expired clearances."  Def.'s Mot. to Dismiss, Ex. E, (Letter from EEOC to D. Rucker, July 13, 2010).  He stated that shortly after these incidents management was watching and documenting his every move.  *Id.*  On July 13, 2010, the EEO sent a letter informing plaintiff, through counsel, that his request to amend the Complaint was denied. *Id.*  The letter states, in relevant part, "[Mr. Burkes] has failed to state a claim of reprisal as a protected basis, since he did not indicate that the alleged retaliatory acts were connected to prior participation in EEO activity or any prior opposition to unlawful discrimination.  Therefore, reprisal will not be accepted as a basis in this complaint." *Id.*

On October 5, 2010, the Agency notified plaintiff of the result of the EEO investigation, and advised that he had thirty days to appeal.  He did so on October 13, 2010.  Compl. ¶¶ 29-30; Def.'s Mot. to Dismiss Ex. F, G.  The Department of Justice issued a Final Agency Decision on November 28, 2011.  Def.'s Mot. to Dismiss Ex. H.  The agency found Mr. Burkes' claim was untimely because he did not make initial contact with the EEOC

within 45 days of the February 17, 2010 incident, as required by 29 C.F.R. § 1614.105(a).  *Id.*  The EEOC further determined that even if the claim was timely, the record did not support a claim of a hostile work environment on the merits.  *Id.*

### C. Events Occurring After EEOC Charge Was Filed

Plaintiff alleged that he was subjected to a number of discriminatory and retaliatory acts after he filed his EEOC Complaint: (1) in mid to late 2010 he was temporarily assigned to FBI headquarters; (2) in November 2010 he received an undeserved low performance appraisal; (3) in December 2010, he was transferred back to Winchester, Virginia; (4) in late 2010, he was falsely accused of sleeping on duty; (5) at an unspecified time in 2010, he was denied the opportunity to attend a training, while two white employees were permitted to attend; (6) in early 2011, his supervisor threatened to place him on a performance improvement plan; (7) in early 2011, his supervisor stated plaintiff "needed to man up and apologize" for making complaints and "embarrassing DocLab;" and (8) plaintiff's supervisor has been targeting and scrutinizing plaintiff's work "in a manner not experienced by plaintiff prior to complaining." Compl. ¶¶ 31-40.

Plaintiff did not file an EEOC Complaint regarding any of these allegations.  He also did not seek to amend his administrative complaint to add any of these allegations except

5

the last one: management was retaliating against him by watching him and documenting his every move.  See Section I.B, *supra*.

Plaintiff filed this action on February 28, 2012. Defendants subsequently moved to dismiss.  The motion is ripe for resolution by the Court.

## II.  STANDARD OF REVIEW

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint.  *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).  A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citations omitted). While detailed factual allegations are not necessary, plaintiff must plead enough facts "to raise a right to relief above the speculative level."  *Id.*

When ruling on a Rule 12(b)(6) motion, the Court may consider "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002).[3]

_____

[3] Defendant attaches several exhibits to the Motion to Dismiss, and the plaintiff does not object to their attachment.  The

The Court must construe the complaint liberally in plaintiff's favor and grant plaintiff the benefit of all reasonable inferences deriving from the complaint.  *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).  However, the Court must not accept plaintiff's inferences that are "unsupported by the facts set out in the complaint."  *Id.*  "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

## III. DISCUSSION

### A. Exhaustion of Administrative Remedies

Before bringing any suit under Title VII, an aggrieved party is required to timely exhaust his administrative remedies. *Hamilton v. Geithner*, 666 F.3d 1344, 1349 (D.C. Cir. 2012). Under 29 C.F.R. § 1614.105(a)(1), an employee of the federal government who believes he has been subject to discrimination is required to first "initiate contact" with an EEO counselor within forty-five days of the allegedly discriminatory action. If the matter is not resolved informally, then the employee may file a formal complaint of discrimination with the agency.  Id.

---

Court considers the charge of discrimination, the correspondence relating to plaintiff's attempts to amend his administrative complaint, and the right to sue letter, which it may do without converting the motion to dismiss into the motion for summary judgment. *See*, *e.g., Williams v. Chu*, 641 F. Supp. 2d 31, 34-35 (D.D.C. 2009); *Gustave-Schmidt*, 226 F. Supp. 2d at 196.  The remaining documents, which relate to the substance of plaintiff's claim regarding the hanging monkey, will not be considered by the Court at the motion to dismiss stage.

§§ 1614.105(d), 1614.106(a).  The employee may amend the complaint "at any time prior to the conclusion of the investigation to include issues or claims like or related to those raised in the complaint." *Id.* § 1614.106(d).

A complainant may file a civil action within 90 days of receiving a final decision from the agency or after a complaint has been pending before the EEOC for at least 180 days.  *See* 42 U.S.C. § 2000e-16(c); 29 C.F.R. § 1614.407.  A Title VII lawsuit is "limited in scope to claims that are like or reasonably related to the allegations" of the administrative complaint. *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995) (internal citations omitted).  In other words, the claims "must arise from the administrative investigation that can reasonably be expected to follow the charge of discrimination."  *Id.*

"For purposes of exhaustion, there are two types of Title VII claims:  (1) claims of discrete retaliatory or discriminatory acts and (2) hostile work environment claims." *McLaughlin v. Holder*, Civil No. 11-1869, 2013 U.S. Dist. LEXIS 19718, *12-13 (Feb. 14, 2013) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110, 115 (2002)).  An employee must timely exhaust the administrative process for each discrete act for which he seeks to bring a claim.  Discrete discriminatory acts "are not actionable if time barred, even when they are related to acts alleged in timely filed charges.  Each discrete

8

discriminatory act starts a new clock for filing charges alleging that act. The charge, therefore, must be filed within the [45]-day time period after the discrete discriminatory act occurs." *Morgan*, 536 U.S. at 113. The law regarding exhaustion of retaliation claims is less clear in this Circuit, as some judges on this court have declined to require separate exhaustion for retaliation claims that arise after a plaintiff has filed an administrative complaint if they are related to the timely filed charges. *See Nguyen v. Winter*, 895 F. Supp. 2d 158, 183-84 (D.D.C. 2012) (collecting cases). At a minimum, however, claims of each retaliatory act must be administratively exhausted "*unless* they were (1) related to the claims in the initial administrative complaint, and (2) specified in that complaint to be of an ongoing and continuous nature." *Id.* at 184(citations omitted).

Hostile work environment claims, on the other hand, are "different in kind from discrete act claims" because "[t]heir very nature involves repeated conduct." *Morgan*, 536 U.S. at 115. Accordingly, "[p]rovided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *Id.* at 117. And that act need not be the last act; subsequent events "may still be part of the one hostile work environment claim." *Id.*

### 1. Plaintiff's Race Discrimination Claims Must be Dismissed

Plaintiff first contacted his EEOC counselor on April 6, 2010.  Any discrete acts of discrimination arising more than forty-five days earlier than this date (*i.e.* February 20, 2010) were not exhausted.  Moreover, given that Plaintiff never initiated EEO proceedings regarding any acts of discrimination arising after April 6, 2010, any discrete acts of discrimination arising after that date are not exhausted. *See* Morgan, 536 U.S. at 113 ("[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act.").  Consequently, the only claim which plaintiff arguably exhausted is the claim regarding the hanging monkey.  Even assuming plaintiff exhausted this claim, however, it would not survive as a race discrimination claim.  When asserting a race discrimination claim under Title VII, the plaintiff must allege two essential elements:  1) that the plaintiff suffered an adverse employment action, and 2) that the adverse employment action was the result of plaintiff's race. *Baloch v. Kempthorne*, 550 F.3d 1191, 1196 (D.C. Cir. 2008).  Here, plaintiff cannot satisfy the first element, because the presence of a hanging monkey does not constitute an adverse employment action. *See, e.g., Taylor v. Small*, 350 F.3d 1286, 1293 (D.C. Cir. 2003) (defining an adverse employment action as "a significant change in employment status, such as

hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits.")(citations omitted). Accordingly, plaintiff's race discrimination claim is dismissed.

### 2. Plaintiff's Retaliation Claims

In Count II of his complaint, Mr. Burkes claims that the defendants have retaliated against him.  Compl. ¶¶ 59-79. Reading the complaint in the light most favorable to the Plaintiff, he alleges that he experienced retaliation occurring at two separate time periods:  before and after he filed his EEOC complaint.  *Id.* ¶¶ 13-16, 31-41.  Defendants argue that none of the retaliation claims have been exhausted, and therefore all must be dismissed.  Def.'s Mot. at 18-20.  The Court considers Plaintiff's claims in turn.

First, plaintiff alleges that management retaliated against him in late 2009 and early 2010.  Plaintiff attempted to amend his EEOC complaint in May 2010 to add this retaliation claim. Specifically, Plaintiff alleged that he had complained to his supervisor about race discrimination and security breaches in late 2009 and early 2010, and after making those complaints, management began watching and documenting his every move.  See Section I.B *supra*.  As set forth above, the agency notified plaintiff and his counsel in July 2010 that it did not accept his retaliation claim for filing; accordingly, it was not

considered at the agency level. There is no evidence that plaintiff challenged the agency's decision not to accept this claim for investigation, or that he filed any additional complaints of retaliation.  Accordingly, because plaintiff did not exhaust his retaliation claim before filing the instant civil action, it must be dismissed.  *See, e.g.*, *Silver v. Leavitt*, Case No. 05-968, 2006 U.S. Dist. LEXIS 12949, at *29-30 (D.D.C. March 13, 2006) (dismissing some of plaintiff's claims for failure to exhaust because the claims were not accepted for investigation at the administrative level). *Robinson v. Chao*, 403 F. Supp. 2d 24, 31 (D.D.C. 2005) (same).[4]

Citing *Zipes v. Trans World Airlines*, Plaintiff contends that he should not be penalized for the EEOC's rejection of his request to amend his EEOC complaint.  Opp'n at 6-7.  In *Zipes*, the Supreme Court held that the exhaustion requirement is not jurisdictional prerequisite to suit in federal court, but a

---

[4] Plaintiff does not argue that he should have been permitted to amend his administrative complaint because his retaliation claim was "like or related" to his claim regarding the stuffed monkey. See 29 C.F.R. § 1614.106(d).  Nor could he.  "A new claim is like or related to a pending claim if it could reasonably been expected to grow out of the original complaint during the investigation." *Weber v. Battista*, 494 F.3d 179, 183 (D.C. Cir. 2007)(citations omitted).  Here, plaintiff's alleged claim of retaliation – that management was watching his every move – shares no factual similarity with his claim of discrimination regarding the hanging monkey. *See, e.g.*, *Bell v. Donley*, 724 F. Supp. 2d 1, 12 (D.D.C. 2010) (amended claims not "like or related to" original claims where they shared no factual similarity save the fact that they were "all allegedly violations of Title VII.").

requirement that, like a statute of limitations, is subject to the narrow exceptions of waiver, estoppel and equitable tolling. 455 U.S. 385, 393 (1982).  The court's equitable power to toll the statute of limitations is exercised only in "extraordinary and carefully circumscribed instances," and it is plaintiff's burden to show that such circumstances apply. *Mondy v. Sec'y of Army*, 845 F.2d 1051, 1057 (D.C. Cir. 1988); *Gantt v. Mabus*, 857 F. Supp. 2d 120, 128 (D.D.C. 2012).  Plaintiff has stated no facts and made no argument that this Court should find such extraordinary circumstances exist; therefore, he has not carried his burden.

Second, plaintiff alleges that management retaliated against him after he filed his administrative complaint, from mid-2010 to 2011. Compl. ¶¶ 31-40. Plaintiff did not file a separate EEOC charge regarding any of these acts, nor did he attempt to amend his April 2010 charge to include them. Accordingly, they do not meet *Morgan*'s requirement that a Title VII plaintiff must timely exhaust administrative remedies for each discrete act alleged.  *Morgan*, 536 U.S. at 110.

As set forth above, some judges on this court do not require separate exhaustion for retaliation claims which post-date an administrative complaint, so long as each subsequent retaliatory act is "(1) related to the claims in the initial administrative complaint, and (2) specified in that complaint to

be of an ongoing and continuous nature." *Nyguen*, 895 F. Supp. 2d at 184 (citations omitted).  Even this more lenient exhaustion requirement, however, is not met here.  Plaintiff does not argue that his allegations of retaliation – denial of training opportunities, receipt of a low performance evaluation, etc. – bear a factual or legal relationship to his allegations of discrimination regarding the hanging monkey, nor does he argue that the administrative investigation could have reasonably been expected to include such incidents.  Accordingly, because Plaintiff's retaliation claims first raised in his complaint to this Court are not "like or related" to the discrimination claim regarding the stuffed monkey which he raised at the administrative level, *Weber v. Battista*, 494 F.3d at 183, they cannot be considered exhausted.  Accordingly, plaintiff's retaliation claims must be dismissed as untimely.

### 3. Hostile Work Environment Claims: Reprisal and Race

In Count III of his Complaint, Plaintiff asserts hostile work environment claims based on retaliation and on race. Compl. ¶ 82.  Defendant asserts that his hostile work environment claims must be dismissed for failure to exhaust. With respect to the hostile work environment claims based on reprisal, the Court agrees.

It is true that a hostile work environment can amount to retaliation under Title VII.  *See Hussain v. Nicholson*, 435 F.3d

359, 366 (D.C. Cir. 2006) (citations omitted).  In order to state a claim of hostile work environment based on retaliation, plaintiff must allege that he engaged in statutorily protected activity, and that his employer subjected him to discriminatory "intimidation, ridicule, and insult" of such "severity or pervasiveness as to alter the conditions of his working environment" to retaliate against him for doing so.  *Id.* (citations omitted).  In order to exhaust his hostile work environment claim, a plaintiff must contact the EEOC within 45 days of "an act contributing to" the hostile work environment. *See Morgan*, 536 U.S. at 117.

Mr. Burke alleges that he participated in two incidents of statutorily protected activity: 1) complaining "in late 2009 and again in early 2010," about "security violations" and "differential treatment of White Employees and African American employees," Compl. ¶ 14, and 2) filing an EEOC complaint regarding the hanging monkey in April 2010.  Compl. ¶ 27.  He contacted the EEOC in May 2010 and attempted to amend his discrimination complaint to add a retaliation claim that after his complaints about security violations and differential treatment, management was watching and documenting his every move.  Def.'s Mot. to Dismiss, Ex. E, (Letter from EEOC to D. Rucker, July 13, 2010).  However, as discussed above, there was

15

nothing improper about the agency's denial of the request to amend; thus, he failed to exhaust that claim.

Although Plaintiff's Complaint alleges he was subject to several other retaliatory acts, there is no evidence that he contacted the EEOC within 45 days of any of Defendant's other allegedly retaliatory acts in response to his protected activity.  See Supra at I.C, III.A.2, (discussing Compl. ¶¶ 31-40), see also Pl.'s Opp'n at 3, 10-11.  Indeed, according to the record before the Court, he did not contact the EEOC regarding any of these claims, at any time. *See Id.*  Accordingly, because he did not exhaust his administrative remedies with respect to any of the acts he alleges are a part of his retaliatory hostile work environment, this claim must be dismissed.  See 29 C.F.R. § 1614.105(a)(1).

Plaintiff also alleges a hostile work environment claim based on race in Count III of his Complaint.  He alleges that the repeated display of the monkey, both hanging by a noose and otherwise on display or visible, constituted a racially hostile work environment.  Compl. ¶¶ 18-19, 23, 25-26, see also Pl.'s Opp'n at 2-3, 7-9.  He also asserts that the employer's actions after he filed his EEO complaint – receipt of an undeserved low performance appraisal, denial of training opportunities, etc. – contributed to a racially hostile workplace environment.  Compl. ¶¶ 81-82, 86, 88.

Defendant asserts that Mr. Burkes' racially hostile workplace claim should be dismissed because he did not contact the EEO within 45 days of first witnessing the monkey hanging by a noose, on February 17, 2010.  Rather, he contacted the EEO 48 days thereafter, on April 6, 2010.  Mot. to Dismiss at 14-17.  This is too narrow a view of plaintiff's hostile work environment claim.  As set forth in the Complaint, plaintiff asserts that on February 17, 2010, he saw the monkey hanging by its neck in a public work area and on an eraser board, which was hung by Bradley Creamer, a white supervisor in plaintiff's chain of command.  Compl. ¶¶ 18, 21.  Plaintiff alleges that the monkey was not only present on February 17, but also for eight days thereafter.  Specifically, he asserts that the monkey "was eventually moved from the eraser board to Mr. Creamer's overhead work bin in his cubicle workstation.  The monkey remained visible."  *Id.* 26; *see also* Pl.'s Opp'n at 6 ("the offensive and derogatory display was not removed on the same day [plaintiff first saw it] but was merely relocated and continued to be visible for at least another week.").[5]

_____

[5] Indeed, plaintiff attempted to amend his EEO complaint to include the continuing presence of the monkey.  See Def.'s Mot. to Dismiss at Ex. D, June 10, 2013 letter from Plaintiff's counsel to EEOC (describing hostile work environment claim to include "whether plaintiff was  . . . subjected to a hostile work environment when his employer allowed the monkey that had been hung by the neck from a noose to remain in open view in the work place for 8 days after Complainant and others complained to

A hostile work environment claim, by "its very nature involves repeated conduct . . . and [is] based on the cumulative effect of individual acts." *Morgan*, 536 U.S. at 115. The claim may be timely as long as "an act contributing to the claim occur[ed] within the filing period." *Id.* at 117. When, as here, a plaintiff alleges that he was exposed to racist and offensive symbols over a period of time, courts have looked to the end of that period for the purposes of determining when a claim is exhausted. *See, e.g., Watson v. CEVA Logistics*, 619 F.3d 936, 943-44 (8th Cir. 2010) (rejecting arguments that employees had to articulate with absolute precision the number of times they saw the racist graffiti, and that the court must analyze each viewing as a separate instance of harassment; "graffiti remains visible until the employer acts to remove it . . . [employees] mere awareness of its ongoing presence . . . could contribute to a hostile work environment.") (citation omitted); *Whorton v.*

---

management about the monkey."). The EEO refused to accept the requested amendment on the grounds that it "does not state additional discrete incidents appropriate for acceptance as separate issues." *Id.* Ex. E, July 13, 2010 letter from EEOC to Plaintiff's counsel. This is irrelevant to a hostile work environment claim, however, which by definition is not based on discrete incidents giving rise to separate issues, but on "the repeated nature of the harassment or its intensity . . . the unlawful employment practice therefore cannot be said to occur on any particular day. It occurs over a series of days . . . and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own." *Morgan*, 536 U.S. at 115 (citations omitted).

*Wash. Metro. Area Transit Auth.*, Case No. 11-1291, 2013 U.S. Dist. LEXIS 23500, *38-39 (D.D.C. Feb. 21, 2013) (for purposes of exhaustion, hostile work environment claim premised on continuous presence of sexually explicit materials in workplace ends "at the conclusion of [plaintiff's] exposure" to such materials).

Burkes' claim here includes sustained exposure to the monkey, which concluded at least a week after February 17, 2010, and therefore within 45 days of April 6, 2010, the day Burkes first contacted an EEO counselor. Accordingly, Burkes may be able to recover for any acts that, along with the display of the monkey, "collectively constitute one unlawful employment practice." *See Morgan*, 536 U.S. at 117. The Court therefore will not dismiss Burkes' hostile work environment based on race as untimely.

### B. Failure to State a Claim

A hostile work environment exists "when the workplace is permeated with discriminatory intimidation, ridicule and insult that is sufficiently severe and pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (citations omitted). Although *Morgan* permits consideration of time barred acts as part of a hostile work environment claim, not all time barred act will be included.

"Both incidents barred by the statute of limitations and ones not barred can qualify as part of the same actionable hostile environment claim only if they are adequately linked into a coherent hostile environment claim – if, for example, they involve the same type of employment actions, occur relatively frequently, and are perpetrated by the same managers." *Baird v. Gotbaum*, 662 F.3d 1246, 1251 (D.C. Cir. 2011)(citations omitted).

In this case, it is undisputed the plaintiff only exhausted the allegations relating to the stuffed monkey.  Nevertheless, reading the complaint in the light most favorable to him, he also appears to allege that a series of subsequent events between mid-2010 and 2011 also contributed to the race-based hostile work environment he experienced.  Compl. ¶¶ 31-40, 81-82, 84, 86, 88.  Accordingly, the Court must determine whether these concededly unexhausted acts are adequately connected to each other and to the allegations regarding the monkey to qualify as part of plaintiff's hostile work environment claim.

### 1. Adequately Connected

Neither the Supreme Court nor this Circuit has offered a precise formulation for determining whether a series of separate acts are "part of the same unlawful employment practice" or rather "an array of unrelated discriminatory or retaliatory acts." *Baird*, 662 F.3d 1252 (citations omitted).  Acts which

"involve the same type of employment actions, occur relatively frequently, and are perpetrated by the same managers," may form a continuous hostile work environment, as are acts outside the statute of limitations that are "similar in nature, frequency and severity" to the acts within the limitations period. *Id.* at 1251 (quoting *Morgan*, 536 U.S. at 120-21 (alterations omitted)); *see also Wilkie v. Dep't of Health & Human Servs.*, 638 F.3d 944, 951 (8th Cir. 2011)).  It will not "always be necessary for the component-acts comprising a hostile work environment to be identical or to take the same form; however, there must be a 'common thread' among them." *Mason v. Geithner*, 811 F. Supp. 2d 128, 178 (D.D.C. 2011).

In this case, the Court is unable to find that that the plaintiff has plausibly alleged the acts occurring outside the statute of limitations are part of his race based hostile work environment claim.  In his complaint, Mr. Burkes identifies nine acts occurring outside the statute of limitations, ranging from a temporary assignment to FBI headquarters to an undeserved low performance appraisal to being falsely accused of sleeping on duty to denial of a request to attend training.  Compl. ¶¶ 31-40.  These actions are not similar to one another or to the display of the hanging monkey.  Plaintiff does not identify the individual or individuals who took most of these alleged actions, therefore, the Court cannot infer they were perpetrated

21

by the same managers.  In short, the Complaint does not present

any "common thread" among the timely and time-barred acts.

    More problematic still is plaintiff's complete failure, in

his brief, to address these otherwise time-barred acts as part

of his race-based hostile work environment claim.  In the motion

to dismiss, Defendant clearly argues that both of plaintiff's

hostile work environment claims – based on race and retaliation

– must be dismissed for failure to exhaust and failure to state

a claim.  Def.'s Mot. at 14-18, 20-21.  In his Opposition,

plaintiff does not address the time-barred allegations in the

context of his race based hostile work environment claims.

Notably, he argues that all of the time-barred allegations

(transfer, poor performance evaluation, sleeping on duty, denial

of training, etc.) should be included in his *retaliation* based

hostile work environment claim, but he only addresses the

allegations regarding the monkey as part of his race based

hostile work environment claim.  *Compare* Pl.'s Opp'n at 7-9

(discussing race based hostile work environment claim and only

addressing allegations relating to the monkey) *and Id.* at 10-11

(discussing retaliatory hostile work environment claim and

addressing all time-barred allegations).  Where, as here,

plaintiff "has made no attempt – none – to crystallize for the

Court how these disparate acts could be seen by a trier of fact

as sufficiently related to coalesce into a single hostile work

environment," the Court cannot conclude that the acts regarding
the monkey are plausibly connected to his allegations regarding
subsequent, time-barred acts.  *Mason*, 811 F. Supp. 2d at 179;
*cf. Laughlin v. Holder*, 2103 U.S. Dist. LEXIS 19718, *42
(finding time-barred acts adequately connected to timely acts
"because [plaintiff] has put forward a plausible theory tying
the acts of her hostile work environment claim together.").

## 2. Sufficiently Severe or Pervasive

For the reasons set forth above, the Court finds that
plaintiff's race based hostile work environment claim is limited
to his allegations regarding the display of the monkey.  The
defendant argues that the allegations regarding the monkey are
not sufficiently severe or pervasive to state a claim.  Def.'s
Mot. at 20-21, Def.'s Reply at 6-9.  Plaintiff responds that
"the continual display of (1) a monkey and (2) a monkey hanging
by its neck in a noose-like fashion" are so egregious and
abusive that, standing alone, they can create a hostile work
environment.  Pl.'s Opp'n at 9.

There is no "magic number" that gives rise to an actionable
hostile work environment claim.  *Harris*, 510 U.S. at 23 ("[W]e
can say that whether an environment is 'hostile' or 'abusive'
can be determined only by looking at all the circumstances.").
Generally, the more severe the conduct, the fewer occurrences
necessary to create a hostile work environment.  *See Ayissi-Etoh*

23

*v. Fannie Mae*, 712 F.3d 572, 579 (D.C. Cir. 2013) ("the test set forth by the Supreme Court [in *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)] is whether the alleged conduct is "sufficiently severe *or* pervasive" — written in the disjunctive — not whether the conduct is "sufficiently severe *and* pervasive." A single, sufficiently severe incident, then, may suffice to create a hostile work environment.") (Kavanaugh, J., concurring); *Stewart v. Evans*, 275 F.3d 1126, 1134 (D.C. Cir. 2002) (in "extreme circumstances," one incident may be sufficiently severe to constitute a hostile work environment).

At the motion to dismiss stage, plaintiff has satisfied his burden of alleging that the display of the monkey hanging by its neck created a hostile work environment.  In this case, the monkey hanging from its neck was prominently displayed "in a public work area and on an eraser board," Compl. ¶ 18, where it presumably was viewed by everyone who entered the area. Furthermore, it was only removed after the plaintiff complained. "The implication of this that had the plaintiff[] remained silent, it would have been on display indefinitely." *Williams v. New York City Housing Auth.*, 154 F. Supp. 2d 820, 823 (S.D.N.Y. 2001).  Indeed, in this case, despite plaintiff's complaint, the monkey remained in the office – at the supervisor's desk where it remained visible – even after the plaintiff complained.  Compl. ¶ 26.

In terms of severity, "perhaps no single act can more quickly alter the conditions of employment than the use of an unambiguously racial epithet . . . by a supervisor." *Ayissi-Etoh*, 712 F.3d at 577 (quoting *Rodgers v. Western-Southern Life Ins. Co.*, 12 F.3d 668, 675 (7th Cir. 1993)).  In this case, both of the physical displays alleged to be perpetrated by a supervisor - a monkey and a noose - are powerful symbols of racism and violence against African Americans.  "Given the history of racial stereotypes against African-Americans and the prevalent one of African-Americans as animals or monkeys, it is a reasonable – perhaps even an obvious – conclusion that the use of monkey imagery is intended as a racial insult where no benign explanation for the imagery appears." *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1297 (11th Cir. 2012) (citations omitted).  Likewise, "the noose is among the most repugnant of all racist symbols, because it is itself an instrument of violence," specifically "this nation's opprobrious legacy of violence against African-Americans." *Williams*, 154 F. Supp. 2d at 824.  Combining these two symbols – a monkey and a noose – gives rise to a plausible inference of a hostile workplace environment as relates to plaintiff as an African-American.  Accordingly, at the motion to dismiss stage, plaintiff has pled "sufficient factual matter" to proceed to discovery on his race-based hostile work environment claim.

## IV.   CONCLUSION

For the foregoing reasons, defendant's motion to dismiss will be granted in part and denied in part.  Mr. Burkes' race discrimination and retaliation claims will be **DISMISSED** for failure to exhaust administrative remedies; Mr. Burkes' retaliation based hostile work environment claim will be **DISMISSED** for the same reason.  Mr. Burkes' race based hostile work environment claim based on the presence of a stuffed monkey, first hanging from its neck by an eraser board and subsequently visible in a supervisor's cubicle, may go forward; Defendant's motion to dismiss this claim is therefore **DENIED**.  A separate order accompanies this memorandum opinion.

Signed:    **Emmet G. Sullivan**
           **United States District Judge**
           **July 15, 2013**